Our second argument of the morning is in a series of consolidated appeals, the lead one being 22-26-36. This is LaTonya Cannon and other plaintiffs versus Armstrong Containers and other defendants. Mr. Bograd, we're going to begin with you. Good morning. Good morning. May it please the court, Louis Bograd for appellants LaTonya Cannon et al., along with my colleague, Thelma Fitzpatrick, who will be handling the rebuttal this morning. In Thomas X. Earle Gramling v. Mallet, and I know this panel is very familiar with these cases, the Wisconsin Supreme Court held that victims of lead poisoning from residential house paint could sue manufacturers of white lead carbonate and invoke Wisconsin's risk contribution doctrine, which permits liability even when the plaintiff cannot prove which manufacturer made the WLC that injured them. In Gibson, this court upheld Thomas' application of risk contribution against numerous constitutional challenges. Then, in Burton, this panel limited the scope of liability under Thomas, but expressly contemplated that there was still a route for plaintiffs to recover, as it clarified multiple issues for future trials. Yet, on remand, the district court held that various preclusion doctrines applied and prevented all of the plaintiffs, including nearly 150 plaintiffs who have never had an opportunity to litigate the issue, to proceed with their claims. This was clear error and must be reversed. Let me start with first principles. As this court said in the opening sentences of Tice v. American Airlines, and I believe, Judge Wood, you wrote that opinion, it is a fundamental principle of American law that every person is entitled to his or her day in court. Multiple victims of air disasters, multiple stockholders of companies that have committed security violations, and multiple holders of rights and pensions normally may all bring their own suits, even if the defendant engaged in a single course of action that affected everyone similarly. So let me pick up with that thought, since obviously our court's decision in Tice was far from the last word on these things. The Supreme Court's decision in Taylor v. Sturgill is my starting point these days, and in that opinion, Justice Ginsburg lists a number of ways, and I don't read this as an exclusive closed list. She lists a number of ways in which prior litigation can be held to be conclusive against somebody in a later bit of litigation. It didn't happen to work in Taylor, but this case is really important and interesting to me because it really raises the question, when there are formally consolidated proceedings, there was a single case management order here, there were, a lot of people were joined under the Rule 20 joinder provisions, it really to me implicates what happens actually with the entire MDL process, even though this isn't quite that, but there are ways these days that courts are managing closely related cases, and it looks to me like that's what this might have been. It looks to me like here you have a single representation raising related claims, careful decisions of which wave of cases is going to go first and which wave of cases is going to go second. So I want you to tell me why Taylor doesn't understand this tight coordination of litigation as something that belongs in that list of exceptions. Your Honor, I'll be happy to answer that question. I think it's important, however, that we distinguish between the three groups of appellants before you to understand these questions because the appellants are not all similarly situated and are briefly referred to them by group numbers. Which is fine. Wave one, wave two, group three, group four. Right. But just so we're clear, the Gibson and Vallow plaintiffs are three plaintiffs who filed their own lawsuits. Those lawsuits were never consolidated in any way formally with any of the other existing cases. But that's your wave four, right? They're being managed collectively. Under the same case management order. Yes. Although with multiple captions on the case management orders, but yes, absolutely. No, in these cases, the analogy that you made to the MDL is exactly right. This is essentially like an MDL. But isn't it different than an MDL? Because the MDLs in the mass tort area, which is where you typically see these bellwethers, they are generally all individual cases that are consolidated for pretrial purposes. They are not cases where all the plaintiffs have joined together in one complaint, which I appreciate your distinction of wave four, because I do think that differentiates from the other cases here, where despite the defendant's efforts to try to make these individual cases, you wanted them all in one complaint in one case. Well, Your Honor, I mean, there's a historical reason why that happened. But you're right. But there's no question that group three is differently situated from group four. And from MDLs. I mean, your point was this is similar to MDLs, but I don't see this as similar to MDLs procedurally because the large MDLs are hundreds of individual cases. That is not the situation here. Well, it is certainly the case that in this case, group three, the group three plaintiffs all joined on two unique complaints, the Allen Trammell complaints. And to that extent, they were part of the same case. And that surely is important. I mean, if you have rule 20 joined her, I don't see any rule that says you wouldn't apply issue preclusion. Well, the critical distinction, Your Honor, is that under the case management order, even though in some sense Allen and Trammell are each one case, the judge's case management order said the parties will now select eight cases from which will then pick four to be waived to. And he used the word cases there as well, but we didn't pick all of Allen and all of the different plaintiffs. We picked eight people, individual people, and only those eight people went forward with discovery. The other 150 people were essentially stayed. Their cases, their claims, whatever term. But there were agreements by you in the case management order that the common issues would, the resolution would apply across the board, which is why this was such an efficient way of handling it. There was an agreement that the court could extend. And in fact, what the court typically did was one side or the other would ask the court to apply a ruling across the board, and then the court would decide whether it was appropriate or not. And in that regard, I think it's important to distinguish between two separate moments in this case. When American Sianamid said, you found that there's no personal jurisdiction over us, apply that across the board, the judge said, well, that's a pure question of law. There's no reason for me not to apply it to all these cases. It isn't really, though. I mean, all sorts of facts underlie a finding of lack of such a process. I don't disagree with you, Your Honor, but that's the way he characterized it. By contrast, ARCO, which in the very first trial, the Burton trial, had been held not liable by the jury, ARCO filed a motion and said, this should apply to us in all of these, to all these 150 cases as well. This is, I'm sorry, I'm trying to find my notes, I think it's Allen Docket 447. And the court said, no, that's not right. In mass tort cases like this, courts recognize that the party's evidentiary treatment of the issues is likely to become more focused and thorough with reiteration, and therefore hesitate to apply issue preclusion after only one or two trials. The situation here is exactly the same. The plaintiffs leave aside, for the moment, the four plaintiffs who filed their, who dealt with, oh, and I should note, the summary judgment motions at issue here, when they were first filed, in the cases involving those four named plaintiffs. The defendants specifically captioned them to apply only to those four named plaintiffs. The plaintiffs' response- This is the wave two summary judgment? The wave two, the original wave two summary judgment while your, what this panel was considering Burton. The wave two summary judgment, the motions were styled as applying to only these four plaintiffs. The responses was specifically said, we're responding on behalf of these four plaintiffs. And the ruling was expressly limited to these four plaintiffs. It was only later, after Burton came down, that you say, we sought consolidation, and in some ways we did, and the defendants opposed, and in some ways they did, and we opposed. I mean, each side- I didn't say you sought consolidation, you filed it as one joint, very large complaint. Complaint. We definitely filed the one complaint at the very beginning. But so after this court's decision came down, we went to the court when the defendants said, okay, now apply summary judgment, apply issue preclusion or law of the case or whatever to all of us. We said, your honor, that's not right. We didn't, the hundred, all of group three and all of group four did not participate in that motion. They were under no notice that it was going to apply to them. They have not had an opportunity for discovery, they did not have an opportunity to participate. Give us discovery so that we can prove the evidence that this panel said we need to prove to win the case. But did they implicitly agree to that with all of their representations in the case management order and other representations to the court? Did we- Implicitly agree to be bound by it? No, I don't believe we did, your honor. In fact, I don't think there's anything in any of the case management orders that ever says I'm going to, this was not that, this was not like a master consolidated complaint in an MDL situation where the judge said he was going to rule on common issues and apply them to everybody. The, I direct the court's attention to the Home Depot case from the third circuit, which I think is really instructive in this regard. Not the facts are a little funky in that case, but the court's basic message, which is that individual cases in an MDL retain their individual identity. And I also, we also quoted in our brief that Judge Fallon's law review article about bellwether trials. The reason you hold bellwethers is that both sides learn about the case and are in a position to- You have an MDL proceeding where you have individual cases and in the Home Depot case, they even recognize that, that cases centralized in an MDL retain their separate identities unless they proceed, they choose to proceed on a consolidated master complaint. No question, your honor. Which is kind of what we have here. One master complaint. No, your honor, it's what we had here when the complaint was filed. It's not what we had here after Judge Adelman said, I am selecting these four cases to be my way of two bellwethers and allowing those four cases alone to proceed to discovery. So you're saying that that's a severance order, essentially. Yes, we called it effective severance in the motion. And if you read the, my colleagues on the other side said that we didn't make that argument below. That's absolutely wrong. We didn't use that terminology, but we specifically say in opposing summary judgment below that these, that the summary judgment motions were styled as motions against only the four plaintiffs, that they were litigated only by the four plaintiffs, that none of the other plaintiffs had any understanding that they were being represented virtually or otherwise. I mean, this, you know, that, and there were no special protections put in place in order to protect their interests. So you're principally talking about a non-party issue preclusion. That's what these arguments most directly apply to. I think not, Your Honor. I think they applied a non-party issue preclusion as to the Gibson and Vallow plaintiffs. Group four, wave four. Group four, yeah. But I also think they apply to group three because when group, when the judge said, I'm going to take LaTanya Cannon and these three other plaintiffs and pull them out and make them the next cases for trial and let them go through discovery and have dispositive motion practice as to them, that separated them from all these other cases. And the- Can issue preclusion- I'm sorry, Your Honor. Can issue preclusion or claim preclusion even apply to the group three plaintiffs given that they are all part of the same complaint? Because typically issue preclusion comes in in a subsequent case. There's a- Right. There's a lot of collateral issues, but nobody's arguing this is a collateral issue. Well, I think issue preclusion can apply to the group three or to group four because there's no privity. These are not, these plaintiffs do not have the same legal claim, the same legal interest as the wave two plaintiffs who litigated the case. But I want to go back to Home Depot- Go back to the basic principle which Taylor reiterates, that every person gets his or her day in court. Exactly. But I want to go back to Home Depot for a second because I think Home Depot really explains what went wrong here. At the end of Home Depot, after the court says issue preclusion in law, the case can't apply on these facts, they say that's not to suggest that judges managing a complex litigation don't have tools they can use to manage these cases efficiently. And we commend them for being creative and efficient. One tool, he says, they say explicitly that they have is the order to show cause. That one thing that you can do, once you've rendered a judgment in cases of only a limited number of plaintiffs, is then you can say, well, it seems to me this principle should apply to the other plaintiffs as well. So I'm- That's one tool, but that doesn't mean you have to use that. But it is the tool that protects the due process interests of the group three and group four plaintiffs because those plaintiffs then get to say, your honor, no, here's why that shouldn't apply to us, because under this panel's decision in Burton, we can still win if we can show you that contemporary consumers were unaware of some of the hidden risks of lead paint, specifically the risks of lead dust. And here we have 1,500 pages of evidence, documentation, expert reports, affidavits from the plaintiffs, et cetera, that we were not fully aware. Can I interrupt you there? We're going to give you some- Don't worry about it. Okay. This is very complicated. I'm mostly concerned about my colleague and her rebuttal. She need not be concerned. All right. She's going to get a rebuttal. Thank you. Okay. Can I focus you specifically for, just to get the benefit of your reaction to this dialogue, to the wave two plaintiffs? You know what I'm- Yeah. Okay. The wave two plaintiffs, and in particular, the summary judgment ruling and the district court's emphasis on what it viewed as a concession. Okay. Because I think the effect of that concession, I don't want to quibble with words here, but the effect of that concession was the district court saying that the wave two plaintiffs basically threw the towel in. They acknowledged that they didn't have any kind of unique evidence to offer on the duty to warn claim, and the timing issue embedded with that. And Your Honor, and we've contended in our briefs here that they should have been given the opportunity to reconsider that position after this panel's decision- Okay. Here's what- Was that position, though, this is my specific question, was that position accompanied by any evidentiary proffer? In other words, I know it is now. No. It was not, Your Honor. Those four plaintiffs said, they looked at the district court's earlier ruling. The wave one ruling? The wave one ruling. Right. And they said, based on this wave one ruling, we know we can go to trial on what, and as we've said on the substantive side of this case, which we're obviously not talking about right at the moment, but on the substantive side of this case, we said that we thought the wave one ruling was correct. We still think, under Wisconsin precedent, it should have been correct, that the real issue was what did the consumers know at the time the paint was sold back in the 30s. And they made the decision, and it may have been a mistaken decision, to not fight the application of the summary judgment on negligent failure to warn. Those four plaintiffs. But that's why I think it's really critical, as we discuss this case, to distinguish the from the other 150 plaintiffs who never had that opportunity to decide negligence. The non-participating wave two plaintiffs, the ones that did not participate in that summary judgment, aren't they bound? Yeah, what we call group three. Group three. Aren't they bound by that concession? Why? It's part of the exact same case. But they didn't make the concession. The motion was filed against four plaintiffs. The opposition was submitted by four plaintiffs. Yeah, but four plaintiffs that are joined under Rule 20, properly joined, right? Yeah. But the judge had said repeatedly, we're going to have to have multiple trials, multiple proceedings, multiple whatever. You're essentially saying that those 150 people who were not even allowed to file briefs, they weren't party to that motion, to say that those people are somehow bound by a concession that four people made in a particular moment in time, in a particular legal context, that quickly ceased to be the applicable legal context after this panel's decision came down in Burton. It's just, I think, as a matter of due process, those other 150 plaintiffs should have had the right, as Judge Adelman initially said when he agreed to give them discovery, they should have been articulated in Burton. And that's what we attempted to do. We submitted 1,500 pages of evidence. And the court just said, well, I don't really want to look at it. I'm just going to hold you all, that you were all precluded, and send you home. OK. Let's hear from the defense side. We'll come back for rebuttal then. Good morning, and may it please the court, Lee D. Julius of Domesday, on behalf of the appellee, the Sherwin-Williams Company. This is a case where the plaintiffs got what they asked for. As Judge Adelman indicated, he jointly administered these cases for over a decade. Plaintiffs brought more than 150 cases under Rule 20, jointly in one case caption, in one case. And they asked, through CMOs, to have issues decided once. And I quote, and this is a DSA 53 to 54 of the record, Your Honor. Plaintiffs said that threshold legal issues should be decided once, and not on a case by case basis. Judge Adelman granted their CMO request, and entered it in every single one of their case. Every single one of these cases. Likewise, defendants brought a motion to sever that 150 cases that came together. Defendants filed a motion to sever. In their opposition, and this is at DSA 14, plaintiffs said, the failure to issue precautionary warnings is one of the numerous questions of law or fact that are common to the plaintiffs. Can I ask whether you are talking about only Group 3, or whether you're also including these small number of people, three people in Group 4, who did file separate complaints, no Rule 20 joined, or they seem differently situated? Correct, Your Honor. So you're not talking about them right now? Well, when I'm talking about the CMO, that was in all of the cases, that included Vallejo and Gibson. So the individual cases, they asked for a CMO to be entered in every one of the cases, and that CMO was entered. But are you arguing that a CMO is the same thing as some kind of Rule 42 ruling? I mean, cases are managed separately all the time, and they don't become separate cases. And I guess one of the things that worries me about your position, just to jump to the chase, is the following. For purposes of non-party issue preclusion, it's possible to go one of two ways. You could go the functional way, which was what the virtual representation doctrine tried to do, or you could go the relatively formalistic way, which is what Taylor chose. Taylor expressly disapproves of this kind of, hey, it looks like all on the facts and circumstances, you guys are on the same page. And they certainly were. If you look at the facts of Taylor, these are not people who are strangers to one another. They belong to the same associations, they were raising the same claims, they were in many ways identical. And nonetheless, the court takes a formalistic approach. And so when I look at what we're supposed to do here, that's maybe the first question I ask myself. You know, do we take a relatively strict formalistic approach and say there were at least certain people here who did not have their day in court and they're entitled to it? Or do we take kind of this more touchy-feely, you know, functional approach that the court seems to have disapproved in Taylor? Well, I don't think the court needs to answer that question here, because what we have is a CMO that governs all of the plaintiffs. All of the plaintiffs ask for the CMO. But that's what you're saying. You're saying the CMO is a consolidation order. Well, what I'm saying is if you look at Taylor, Your Honor, footnote seven specifically says in Taylor that when can you have non-mutual defensive issue preclusion? When you have an express or implied agreement to litigate the cases together. When all of the plaintiffs litigate, that's Taylor. And you look at the Home Depot case. The Home Depot case expressly says when you use CMOs, judges should use CMOs to bring issues together, to have issues decided once. That's exactly what we have here. But do we? For group four in particular, I want to focus on the same group Judge Wood is pointing out. You have the one CMO where they agreed that there are some threshold legal issues that will, of course, apply to all cases. And it seems like in the six factors that Taylor identified, that that, in terms of agreement to be bound, is all you have to hang your hat on, that one CMO for group four where they said certain issues would apply to all. What we have, Your Honor, is after that CMO, the judge applying it and applying it to non-issue defensive issue preclusion. And in the case of American Cyanamid, it dismissed Cyanamid from every single case after Burton won. But that seemed to be pursuant to a particular agreement about Cyanamid, just this personal jurisdiction issue. It didn't seem, I didn't read it as just this wholesale agreement for everything to be all for one and one for all. Nor did I. No, well, Your Honor, what happens in Cyanamid is all of, in the motion to dismiss, it was filed under every case. I'm not sure what happened in Cyanamid, but I'm saying how much do we leverage that out to the rest of the case? Because what happens is the plaintiffs were on notice at that point that this issue preclusion wasn't going to just apply to defendants, which is what the plaintiffs really wanted to do. No, but it has to be more than on notice. They have to, under Taylor, they have to agree, either explicitly or implicitly. Or implicitly. And I'm focused on group four because they're not part of the complaint that wave three is. They're not arguing all along, we don't want to sever, we're going to stay the same. And the only evidence I see in this record that they agreed and it would be explicit is the one CMO that we've been talking about where they say there will be some issues that will cut across everybody and it's more efficient to do this. That seems under due process like a lot to hang your hat on that they're going to get their day in court based on that. But your honor, there's a sequence of events. So in 2019, American Cyanaman is dismissed for every one of these cases. Take that out. I understand. I see that. Take that out. Because I don't see that as the plaintiffs in wave four conceding that everything is going to apply to them. I hear you, but the sequence here is important because that happens in 2019. Burton comes forward. The wave two plaintiffs come into Burton and they say, we're not going to re-litigate any of the issues that were decided in Burton one. We don't contest any of those. Then at the same time, while that case is pending, and mind you, we asked the court and we asked the plaintiffs to stay all further proceedings. Let's find out what happens in Burton two. And all of the plaintiffs said, no, we want to move forward with more cases. We want to press forward. It was their litigation strategy. Wave four didn't move forward. Yes, they did. Not with trial or summary judgment. They objected to the stay. They objected. Wave four objected to that stay. So they move forward with discovery. That can't bind them to decisions in a summary judgment. But Your Honor, and then there was another CMO request that wave four joined that said, we want more plaintiffs. And again, they said, and this is after Burton one, to decide issues once. That we think, in fact, now that we've had a trial and now that we've had wave two go through discovery, we think we can bring more plaintiffs on and we can do it faster. So to suggest that the wave four plaintiffs weren't active participants is not correct. Did they get discovery? Active participant is different than what Taylor says for due process is required that you need an agreement, either explicit or implicit. Or through conduct. And it seems like you're hanging your hat on an agreement for the wave four plaintiffs based on the CMO that I'm having a hard time seeing as an implicit agreement to be bound by summary judgment rulings that were filed in a different case that they're not part  I understand, Your Honor. But that was the intent of the CMO. And Judge Adelman, who entered the CMOs, who heard the parties, who was part of the process, is entitled to deference on how he interprets those CMOs. What was going on on the ground? But we can read the CMOs, too. I mean, I think you're putting some interpretation on how far they're going to go. We know there's some coordination. Nobody disputes that. But I think Judge St. Eve is pointing out that Taylor, with, you know, respect to the right of each person to have their own day in court, is saying consent. But that's what we had here, Your Honor. Consent to what? Consent to joint discovery? You know, that's not the same thing. But there's, not every plaintiff participates in the same way in the case. And what the plaintiffs did in this case, through the CMOs, is identify, yes, we are going to have representatives. Those representatives will have discovery. Those representatives will have trials. And, in that same document, and those threshold legal issues will apply to everybody. What's the best legal authority? You think you have the husband-wife Jensen case? Well, Jensen demonstrates that non-mutual issue preclusion is, defensive issue preclusion, is acceptable under Wisconsin law. That it is a thing. At least on that fact pattern. With a fairness overlay, though, Wisconsin does have a two-part test. Yeah, absolutely, Your Honor. And that doesn't answer the federal due process constitutional issue. Yes. The Taylor. That's fair, Your Honor. But if you look at Taylor, which does recognize that there are instances where you can have non-mutual issue preclusion, including implied, applied agreements. In this case, I would argue it's expressed where they say we're only going to decide things once. And then you also look at Home Depot, which Home Depot says, you know, this is a case management tool. You can't, in an MDL, apply to individual cases, rulings that you make. But if you bring them together, if you do a consolidated complaint, if you do a CMO, if you issue orders for everybody, you can bring in these legal claims. And you can decide them once for all cases, which is exactly what the plaintiff says. But again, that's different because in Home Depot, the court recognized that in MDLs, cases retain their separate identities because they're filed separately, not the ones where there are a bunch of joint plaintiffs, unless they choose to proceed on a consolidated master complaint. So, it differentiated what I'll call here wave three from wave four. That's correct, Your Honor. But if you go back a few pages before that, the Home Depot court also says, and CMOs are another mechanism by which the judge in an MDL court could bring people together. No doubt. But it doesn't say that a CMO, and we're not bound by this, but it doesn't say that a CMO as a matter of law always is consent. Right. No question about that. No question about that. So, argue it in turn. How is it that you see the group four plaintiffs as having had a fair opportunity to litigate the duty to warn claim? Don't go back to the CMO. I just don't see how they had an opportunity. But, Your Honor, to say that when they agreed to be bound by representative decisions, that's what they did when they asked for the CMO. They came to the court and they said, enter this CMO so you can decide things once. And wave four did that. So, you view it as like, that's exactly what Taylor says. Some kind of agreement to claim preclusion going forward? Or issue preclusion? It's what they asked for. They asked the judge to issue a CMO so that they could have threshold legal issues decided once. That's wave four. How is this a threshold legal issue when it's the application of law to the facts? It's a summary judgment. If you said, okay, they were bound by an agreement that here's what the standard for negligence is for this claim in Wisconsin. That would be compelling. You decide that once. But a summary judgment, you're applying the facts and the law and making an individual determination. How on earth could that language have been an agreement to be bound by that? Well, as they said in the motion to sever, now this is a different group of plaintiffs, but still on the plaintiff's side. Failure to warn is particularly conducive to a... You denied the motion to sever, so that doesn't help you. But the court said we can address the trials, individual discovery, without the disadvantages of severance. And that's what the court tried to do. It's almost like you're arguing that a combination of consent through the CMO and notice through the personal jurisdiction, it's the combination of those two things that you think sum to fairness vis-a-vis the group four plaintiffs. Absolutely. They asked for it and they were on notice that it was going to apply to them. And the plaintiffs after Sienemann were dismissed didn't stand... And so if we were to disagree with you on either of those branches of your argument, we would have to rule the other way and say they get their day in court. If we didn't think Sienemann meant that much or if we didn't see it as such an across-the-board agreement. If the court looks at the entirety of the record with the CMOs, the plaintiffs' request, the dismissal of Sienemann and Judge Adelman's interpretation of his own CMOs of how he handled this litigation, I think the conclusion is fair that the wave four plaintiffs did have an opportunity to participate and that they were engaged in the litigation. And under Taylor and Home Depot, that's sufficient to apply issue of preclusion. Okay. Very well. We'll hear from your colleague. Thank you, Your Honor. Thank you. May it please the Court. Brian Schmalz back for the appellees. I'd like to briefly address why, even if the group four plaintiffs could relitigate the necessity of a warning here, summary judgment would still be required on that common question. That's the... As a matter of law, there's no need to warn of risks under Wisconsin law when there's ample reason to believe that those risks are already known. And that was the ultimate holding in Burton, and that was the point that the wave two plaintiffs conceded, and they were right to do so. And the new evidence that plaintiffs purport to marshal here, evidence that they didn't bother to present in Burton, didn't bother to present in wave two, doesn't move the needle at all. I'll start with what the standard is and then why plaintiffs cannot meet it. But why couldn't the group four plaintiffs bring up that new evidence now? If we find that Taylor applies, why couldn't they go back and bring up that new evidence? I agree on wave two, that ship has sailed. But wave four, there's nothing, if it goes back, that would preclude them from raising this new... It seems almost a new theory in a way. Right. And to be clear, I'm assuming, contrary to what Mr. DeJulius explained and what I believe is right, that they can raise this new evidence and relitigate that question now. Okay. That's the premise of it. Okay. I misunderstood. Okay. Group two. So you're talking about group four or group two? I'm talking about... Anybody. Anybody. Most of the discussion was about group four, but I'm addressing the merits, which the court doesn't need to reach, but if it wanted to... I don't see why... I mean, in light of the proffered evidence, it does seem that there's a distinction between knowing that little children might eat paint chips versus realizing that even though it's a pristine place and there aren't any paint chips around, there's still this dust that gets in. I mean, I don't know the answer, but it seems to me that there are views on either side of that. And it seems like, just to pick up on that, that's not something we should be doing in the first instance on appeal. If it were necessary to reach the merits, the court could remand. But I want to explain briefly why the Wisconsin duty to warn standard is such that it's actually a very easy question, and it's an easy question that will make sense in light of the wave two concession. So the reason it's an easy question is because of that stressor standard. This is the... So I'm sorry to interrupt, but just in order to agree with you then, we would have to agree that group four is bound by the wave two concession? No, not at all, Your Honor. All right. This is a separate argument. Okay. You just threw that in. I'm assuming... You threw me off. Sorry. I'm assuming hypothetically in the alternative that you're reaching the merits, which again, we don't think... Let's just say we're reaching the merits for group four for simplicity purposes. For simplicity. The merits of the duty to warn question. That's right, which is under Wisconsin law. That's a question of law. It's probably fair to call it a mixed question, but stressor itself, citing the Rockwhite case, says that this is a question of law where there's no dispute about the underlying facts. And that is what I propose is the scenario that we find ourselves in. There's no dispute, even granting the plaintiffs this additional evidence that they want to marshal at this stage. We're not taking issue with that factual evidence. We're taking issue with its relevance. And it's irrelevant under the Wisconsin standard, which is a purely objective standard that looks at what manufacturers had reason to know. Under stressor, it says that the plaintiffs must show that the manufacturer, quote, has no reason to believe that the plaintiff will realize the product's dangerous condition. So a lot of the new evidence that was propounded recently, my friend on the other side said it's affidavits from plaintiffs or their caregivers. That subjective individual evidence is irrelevant because it doesn't go to the objective standard of what manufacturers had reason to know. And it doesn't... But how would you propose to prove that? I mean, the plaintiffs are showing that the public at large, I mean, there were no articles, there were no things, warning in particular, about the dust that, as the paint slowly degenerates, the dust that's in the air that's inhaled. Right. I mean, if there had been, you know, a Surgeon General report or if there had been some industry report, I mean, something, but they're saying the fact that none of these people knew is some evidence that a reasonable person, you know, your paradigmatic objective standard also would not have known. Right, Your Honor. And let me address that point directly. What manufacturers would have seen out there in the world at this time is this, that in 1992... And this time means the 90s, roughly. The 90s through the early 2000s. Yeah, yeah. So by 1992, Congress had adopted the Residential Lead-Based Paint Hazard Reduction Act, which did two things that are dispositive here. One is it made these legislative findings about the risk, not only of lead paint in general, but of lead dust in particular. So lead dust is absolutely being highlighted at this point. But more importantly, what Congress did is it mandated the disclosure of that lead dust risk to buyers and renters. So if you're a manufacturer at this point, what you see is that by the mid-90s, every single buyer and renter of pre-1978 homes where there might be lead paint on the walls is to receive this mandatory pamphlet from the EPA. But I understand that that pamphlet only goes to new buyers and renters, so there are many people in existing stock who never see any such thing. That's right, Your Honor. And it's also to be given to those who renew their leases. So this would be something that plaintiffs and their caregivers, people in their position, would receive even if they were already in a house. It sounds like you're raising issues of fact on a merits issue before the Court of Appeals that haven't gone through the District Court. So this is in plaintiff's evidence, Your Honor. This is in the new evidence that they wanted the Court to consider. So I'm just using what they're putting in front of you. But we don't know what new evidence Wave 4 wants to enter, do we? I don't think summary judgment was ever filed against them. Now you're saying that the new evidence raised by Wave 2 is going to be the same as what's raised by Wave 4, and at the Court of Appeals we should accept that when it hasn't gone through the District Court. No, Your Honor. All this evidence came in at the summary judgment stage when summary judgment was entered against all of the remaining plaintiffs. It would apply to Wave 4 too? Yeah. They participated in that. They had the opportunity. This was their evidence. And that proves the opposite of what they need to prove. Because what a manufacturer is going to see is that every renter or buyer is going to have access to this information that has to be given to them. And that pamphlet that the EPA produces, which is at DSA 232, it walks through all the warnings that plaintiffs say should have been given here. It walks through the fact that lead dust may be invisible. It walks through the fact that children may inadvertently put lead dust in their mouth through normal mouthing behaviors. All of those warnings are there. They're out there in the world, and they're out there in the world in a way that Congress designed to get in front of plaintiffs, their caregivers, and people in their position. Can you back up just one second? What summary judgment proceeding did the Wave 4 below in Gibson plaintiffs participate in? All of the plaintiffs are up here now because summary judgment was granted against them. And my friend, Mr. DeGiulio, has explained why that was correct on issue preclusion grants for the last group of plaintiffs. But they all had the opportunity to put this evidence and did put this new evidence into the record. Okay. So all you're doing is you're kind of circling back to the points he was making about the preclusive effects. To be clear, my argument isn't relying on preclusive effects. My argument is just saying even if they did require the ability to re-litigate these questions, the evidence that they would use to re-litigate it, the evidence that they have tried to use to re-litigate it, doesn't help them. It's in the evidence that's in the appendices. Right. That's right. So for these reasons, manufacturers would see out there in the world that everyone in the plaintiff's positions should have been given this warning for reasons that Congress mandated. And so it's impossible for plaintiffs to show what they must show to survive summary judgment, that there was no reason for defendants to expect awareness of these risks. So on these common questions that plaintiffs shouldn't be able to re-litigate, which I reiterate is our primary position, even if they were to re-litigate them, they could not prevail on those questions anyway. If the Court has no further questions, we'd ask you to affirm. Okay. Mr. Smallsback, thank you very much. Thank you. Ms. Fitzpatrick, we'll hear from you and we'll give you the rebuttal time that you asked for. Thank you, Your Honors. May it please the Court, Fidelma Fitzpatrick, on behalf of the plaintiffs and the appellants. I hate to throw you off, but just a quick question in light of what we just heard. Can you clarify, did the Group 4 plaintiffs participate in the summary judgment motion below? Or Wave 4, whatever you want to call them. The answer is initially yes and then no, and let me explain the answer to that. You'll see this at the appendix in 818. When the cases were remanded from Burton 2, they came in front of Judge Adelman again. The plaintiffs asked, all plaintiffs asked, including the Group 3 and Group 4 plaintiffs, asked for additional discovery because what they wanted to be able to do was to address the factual issue that the Burton 2 Court had recognized. And what Judge Adelman said at appendix 818 is he said that the remaining plaintiffs, that's Group 3 and Group 4, have not had an opportunity to conduct discovery into this issue and I am very reluctant to deny them that opportunity. Such evidence would be essential in opposing the defendant's motions for summary judgment. He goes on and then recognizes that the question that has been remanded to this Court that he's considering on summary judgment is an objective standard and presents an issue of fact, a question of fact. What happens then is the Group 3 and Group 4 plaintiffs then put in not just affidavits from their own caregivers but affidavits from expert witnesses, including Dr. David Jacobs, who worked in the federal government, to say that the consumer expectations and the consumer in the 1990s and 2000s was not sufficient. Judge Adelman then, in granting the summary judgment, ignores all of that evidence. He never looks at it. He never considers it. He just says, I know all of that's out there, but I'm not even going to consider it. He essentially says, I made a mistake because you could have explored this before, doesn't he? He says that you could have explored this before, which would have been going back to the Wave 2 plaintiffs, could have put this in in their original summary judgment motions, which were briefed and argued pre-Burton 2, and what's significant about that, Your Honor, is post-Burton 2, when we come back with a different, or I'm going to call it a clarified legal and factual landscape, the defendants, including defendants who had not availed themselves of certain arguments of Burton 2, used those arguments before Judge Adelman to have a new renewed summary judgment. We were responding, plaintiffs were responding to the renewed summary judgment motions that had been filed by the defendants that were based off of Burton, which is why we had asked for the opportunity to do that factual record. Judge Adelman does ultimately decide that he was mistaken, but the reality is this court sent back with a factual question. And I think that I want to focus just on my very brief time remaining on Group 3 because I think it's very important here. There is this fallacy that has been perpetuated by the defendants that Group 3 was somehow consolidated for all purposes in what we have going on. We know that is not true. First of all, Allen ECF 160, Judge Adelman, looking at the severance and looking at the misjoinder, specifically says he's doing it for administrative purposes and recognizes that each individual plaintiff will have individual discovery and will have individual opportunity to brief their cases and try their cases. Secondarily, throughout the below proceedings, these defendants, and particularly Sheryl Williams, consistently acknowledged that issue preclusion cannot and does not apply in these cases because the plaintiffs do not have sufficient identity of interest. And they do that in a number of different places, Allen ECF 362, where they say specifically, and I think that this is instructive, the court, which is the district court, has recognized that even the first three rounds of plaintiffs, the plaintiffs before you on Burton 2, did not share an identity of interest for purposes of issue preclusion. The jury had to make separate findings on questions of ARCA's liability for negligence and failure to warn for each plaintiff on three separate verdict forms. The jury's decision on those questions for one plaintiff did not bind any other plaintiff. And that was for the three plaintiffs who had their cases tried together. Sherwin-Williams admits that there's no identity of interest. They go on in ECF 447, where Judge Adelman denies the ARCA motion for issue preclusion. And what had happened there is ARCA had won at the initial trial and had filed for issue preclusion. And the judge said, no, we can't file issue preclusion for all cases going forward for all other plaintiffs because there's not sufficient identity of interest and we have a combination of complex legal issues and complex factual issues that all other plaintiffs are going to have the opportunity to come forward and present in their individual cases. And then we also have Allen ECF at 883 and Allen ECF at 1033, where, again, Sherwin-Williams and Armstrong specifically argue that issue preclusion does not apply in these particular cases. It is a fallacy that Judge Adelman, or through these case management orders, was dealing with all of the 140-odd plaintiffs that were on those two complaints collectively. Each one of those case management orders and each one of the issues that were decided was decided in one of two ways throughout the entire pendency of this litigation. Either, one, a motion was filed for partial consolidation on an issue, an issue of fact, and that was something, for example, in a protective order, which is ECF 207. Or, separately, there were individual cases, so there were individual plaintiffs, and different motions for summary judgment and different motions were filed as to individual plaintiffs. But the reality is those Wave 3 and those Wave 4 places excuse me, Group 3 and Group 4 plaintiffs, vis-à-vis Wave 1 and Wave 2, discovery was stayed. They had no ability to conduct discovery while Wave 1 and Wave 2 were going on. They had no ability to present any arguments at summary judgment. They had no ability to present any argument on appeal to this court during Burton 2, and they simply were completely denied their entire opportunity to have their own facts, their own evidence, considered by either an appellate court or by the district court because of the way that Judge Adelman decided that he was going to manage this docket and how he was going to handle those Group 3 plaintiffs that were on the same complaint as a trial plaintiff but had not had their cases activated. And that is the issue that we, that is one of the key issues that we're in front of because those plaintiffs have not had their due process opportunity. They had no notice that their cases were being heard. They had no opportunity to have them heard, and they are now stuck with litigation decisions that were made in the context of motions that were filed on behalf of very specific plaintiffs. And I know that I'm over my time. Your Honors, I appreciate the time that you've given me. Thank you very much. We really thank counsel for all parties for the time and care that's gone into the briefing and the argument. We'll take the consolidated appeals under advisement. Thank you.